**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ARLINGTON INDUSTRIES, INC.,

Plaintiff,

v.

ELECTRONIC CUSTOM
DISTRIBUTORS, INC.,

Defendant.

CIVIL ACTION NO. 3:10-CV-842

(JUDGE CAPUTO)

<u>**MEMORANDUM**</u>

Defendant Electronic Custom Distributors moves to dismiss the present action for lack of personal jurisdiction. (Doc. 8).  Because the Court lacks personal jurisdiction over the Defendant, the Motion will be granted.

**I. Background**

Arlington Industries, Inc. (Arlington), brought this action against Electronic Custom Distributors, Inc. (ECD).  Arlington seeks a declaratory judgment of non-infringement and invalidity of one of ECD's patents.

Arlington is in the business of distributing electrical fittings, connectors, and related materials, while ECD distributes audio, video, and telecommunication products to dealers.  Arlington is the record owner of Patent Number 7,563,979, which relates to a protective cable chute for routing low-voltage cables through walls.  Arlington manufactures products that are covered by the claims of the cable chute patent.

At issue in this case is ECD's Patent Number 7,654,405 ('405 Patent), relating to a

method and system of a detachable nose faceplat e.  When an installe r embeds electrical wires in a wall, the detachable nose faceplate can cover the unsightly hole while allowing a wire to be threaded through the wall.   The application leading to the faceplate patent was filed on October 17, 2006.  Around March 2, 2007, the patent was assigned to ECD.

While the patent applicati on was still pending, ECD amended it three times.  The second amendment was filed on April 8, 2008 and added five new claims.  On February 26, 2009, ECD filed a third amendment  to the application, adding nine new claims.  Arlington alleges that ECD made these amendments in order to expand the coverage of its patent so it would encompass some of Arlington's products.

On  September 23, 2009, an ex-parte requ est  for a reexamination was filed for Arlington's cable chute patent pursuant to 35 U.S.C. § 302.  The request cited to prior art, including the ECD faceplate application, as  bearing on the patentability of the cable chute patent.  Although the party requesting the reexam ination  is kept confidential, ECD has admitted in jurisdictional discovery that it requested the reexamination.

Anticipating that ECD would file suit fo r infringing on the faceplate patent, Arlington brought this action, seeking a declaration that it is not infringing on the faceplate patent and that the claims of the faceplate patent are invalid.

ECD moved to dismiss for lack of personal  jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  (Doc. 8).  Arlington opposed the Motion, moving in the alternative for jurisdictional discovery.  The parties were allowed forty-five days to conduct discovery on the issue of personal jurisdiction pertaining to the time period beginning January 1, 2003, to the date the complaint was filed, and were gi ven the opportunity to  submit supplemental

briefing.  The Motion to Dismiss has now been fully briefed and is ripe for review.[1]

## II. Discussion

### A. Legal Standard

The  law of the Federal Circuit, rather        than  the regional circuit, controls the determination of personal jurisdiction "over out-of-state patentees as declaratory judgment defendants."  *Hildebrand v. Steck Mfg. Co, Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002) (citing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998)). When personal jurisdiction is challenged, the pl aintiff carries the bur den of showing that jurisdiction exists.  *Iowa State Univ. Research Found., Inc. v. Greater Continents Inc.*, 81 F. App'x 344, 349 (Fed. Cir. 2003) (citing *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)).

District courts are permitted to exercise personal jurisdiction over a nonresident to the extent allowed under the laws of the state where the district court sits.  Fed. R. Civ. P. 4(e). Two inquiries are required in determining whether   jurisdiction exists over an out-of-state defendant: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009) (quoting *Genetic Implant Sys. v. Core-Vent Corp.*, 123 F.3d 1455 (Fed. Cir. 1997)).  Here, as Pennsylvania's long-arm statute extends to the limits of due process, 42  Pa.C.S. § 5322(b), the two tests collapse solely into a due

---

1 The parties' supplemental briefs have been filed under seal.  (Docs. 28, 31 and 40).  As such, some specific statistics have been excluded to avoid disclosure of confidential or privileged information.

process inquiry.

Such due process requires that an out-o f-state defendant "have certain minimum contacts with [the forum] such that the maint enance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  *See Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2853 (U.S. 2011) (affirming that "[t]he canonical opinion in this area remains *International Shoe*").  Due process also requires some voluntary action by the defendant; this action serves as "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted).

Having the requisite minimum contacts with the forum state may subject the defendant to either general jurisdiction or specific jurisd iction.  General jurisdiction allows a court to "hear any and all claims against [a party] w hen their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 285 (citing *International Shoe*, 326 U.S. at 317).  The hallmark of general jurisdiction are "conti nuous and systematic" contacts with the forum state, even where the cause of action is unrelated to those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984).

Conversely, specific jurisdiction "arises out of or "relates to" the cause of action when the contacts are "isolated or specific." *Burger King*, 471 U.S. at 472–73.  It depends not on an entity's overall vulnerability to suit in a form but "on an 'affiliatio[n] between the forum and

the underlying controversy,' principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear,* 131 S. Ct. at 2851 (citing von Mehren & Trautman, Jurisdiction to Adjudicate:  A Suggested Analysis, 79 Harv. L. Rev. 1121, 1136 (1966)).

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action where the district court lacks personal jurisdiction over the defendant.  Once challenged, the plaintiff bears the burden of establishing personal jurisdiction.  *Iowa State Univ. Research Found., Inc. v. Greater Continents, Inc.*, 81 Fed. Appx. 344 (Fed. Cir. 2003).  Where, as here, there has been no evidentiary hearing, "a plaintiff need only to make a prima facie showing that defendants are subject to personal jurisdiction."  *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

## B. General Jurisdiction

"When the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process      is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation." *Helicopteros Nacionales De Colom. v. Hall*, 466 U.S. 408, 414 (1984).  Unfortunately, "[n] either the United States S upreme Court nor [the Federal Circuit' has outlined a specific test to follow when analyzing whether a defendant's activities within a [forum] are 'continuous and systematic.'"  *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).

Instead, in analyzing the Defendant's contacts with the forum, a district court will look to the aggregate effect of those contacts as a whole. *Aeration Solutions, Inc. v. Dickman*, 85

5

Fed. Appx. 772, 774 (Fed. Cir. 2004).  Taken together, the court will consider "whether the company's contacts are substantial for the forum."  *Lakin v. Prudential Sec.*, 348 F.3d 704, 709 (8th Cir. 2003); *Provident Nat'l Bank v. California Federal Sav. & Loan Asso.*, 819 F.2d 434, 437-38 (3d Cir. 1987).

*Helicopteros Nacionales De Colom. v. Hall* considered whether a Texas state court could exercise jurisdiction over a Colombian corporation ("Helicol") for the crash of one of its helicopters in Peru.  466 U.S. 408, 409 (1984).  The combined contacts with the Texas forum included "sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from [a Texas corporation] for substantial sums; and sending personnel to . . . Fort Worth for training." *Id.* at 416.  These contacts were not trivial; the helicopters purchased in Texas constituted 80% of Helicol's fleet and constituted more than four million dollars of commerce over seven years preceding the accident. *Id.* at 411.  Still, the Court held that these contacts did not "constitute the kind of continuous and systematic general business contacts" necessary for general jurisdiction.  *Id.* at 412.  In finding as much, the Court promulgated a long list of considerations it found relevant to a lack of jurisdiction:

> Helicol never has been authorized to do business in Texas and never has had an agent for the service of process within the State.  It never has performed helicopter operations in Texas or sold any product that reached Texas, never solicited business in Texas, never signed any contract in Texas, never had any employee based there, and never recruited an employee in Texas.  In addition, Helicol never has owned real or personal property in Texas and never has maintained an office or establishment there.  Helicol has maintained no records in Texas and has no shareholders in that State.

*Id.* at 411.

Relying on *Helicopteros*, the Federal Circuit found a lack of general jurisdiction by the State of California in a similar declaratory judgment action asserting patent invalidity and non-infringement against a British defendant. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1014-18 (Fed. Cir. 2009). That defendant was "not registered to do business in California, nor [did] it have any facilities, assets, employees, or agents there." *Id.* at 1014. However, weighing in favor of general jurisdiction, the defendant had: (1) flown company representatives to California to negotiate a potential license agreement with the plaintiff; (2) entered into a "collaborative agreement" to "jointly develop a Centre of (Microarray) Excellence" with a third-party company with California offices; (3) "entered into non-exclusive licenses with 'about ten' California companies;" (4) participated in three scientific conferences in California; (5) electronically published (via website) a scientific publication to which the University of California was a top-ten institutional visitor; and (6) sold twenty of its systems to a California company for at total of $7,600, or 1% of its revenue for that year. *Id.* at 1015-16.

Even with so many forum contacts, the Federal Circuit held that "nothing here exceeds the commercial contacts that the Supreme Court held were insufficient in *Helicopteros*." *Id.* at 1018 (noting that "[l]ike the defendant in *Helicopteros*, Oxford has no actual physical presence or license to do business in California"). Instead, it was a "classic case of sporadic and insubstantial contacts with the forum state, which are not sufficient to establish general jurisdiction over the defendants in the forum." *Id.* at 1017 (citing *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008)).

The instant case concerns Defendant ECD, a Texas corporation with its principal

place of business in Texas.  It has never registered to do business in Pennsylvania, never

held any license or permit issued by a Pennsylvanian authority, or paid any Pennsylvania

taxes.  It has never employed a Pennsylvania resident or utilized one as an agent or

consultant.  ECD has never had any facility in Pennsylvania, nor maintained any interest in

real estate, personal property, or intangible property in Pennsylvania.  It has never attended

any trade shows or marketing functions in Pennsylvania, does not advertise in Pennsylvania,

and none of its employees have ever traveled to Pennsylvania on business.  Aside from

limited purchases and sales, Defendant has never contracted with a Pennsylvania resident.

Instead, Plaintiff alleges ECD's activity within  the forum in the form of sales, purchases,

newsletters, and websites combines to form the basis of general personal jurisdiction.  For

the reasons stated below, the Court finds these contacts insufficient to form the basis for

general jurisdiction over Defendant ECD.

**1. Defendant's Purchases and Sales in Pennsylvania**

Defendant's extremely limited commerce in Pennsylvania is an inadequate foundation

for general jurisdiction.  It is clear that limited commercial activity shall "not foreclose a finding

that the company has sufficient minimum contacts with the forum."   *Alien Tech. Corp. v.*

*Intermec, Inc.*, 2007 U.S. Dist. LEXIS 2851 at    *14-16 (D.N.D. Jan. 4, 2007) (citations

omitted).  However, this does not mean that negligible commercial activity is alone sufficient.

 "[T]he overall nature of a business's activity is a more reliable indicator of 'continuous and

systematic' contacts, than focusing on a small percentage of revenue generated from that

particular state."  *Verona v. United States Bancorp*, 2009 U.S. Dist. LEXIS 14863 (E.D. Pa.

Feb. 23, 2009).

Instead of considering percentages alone, a court should look to whether a company "has substantial and significant ties with the Commonwealth through the sale of its product." *AMP Inc. v. Methode Electronics Inc.*, 823 F.Supp. 259, 268 (M.D. Pa. 1993). In *Alien Tech.*, the court applied such an analysis to find that 0.0571% of sales revenue was sufficient for general jurisdiction over a foreign corporation registered in the forum, paying taxes in the forum, and conducting business trips within the forum. *Alien Tech. Corp. v. Intermec, Inc.*, 2007 U.S. Dist. LEXIS 2851 at *14-16 (D.N.D. Jan. 4, 2007) (citations omitted). Similarly, *3M Innovative Props. Co. v. InFocus Corp.* held that 0.064% of sales in a forum were adequate to exercise general jurisdiction where the defendant had established distribution channels, generated twenty million dollars in sales over the preceding five years, contracted with forum companies for repair and warranty services, and sent employees on twenty-one visits to the forum in the preceding year. 2005 U.S. Dist. LEXIS 2381 at *6-7 (D. Minn. Feb. 9, 2005).

Conversely, *Verona* found a lack of general jurisdiction for a company with 2.88% of its revenues in Pennsylvania. 2009 U.S. Dist. LEXIS 14863, at *9-10 (E.D. Pa. Feb. 23, 2009). That court compiled a non-exhaustive list of factors that contributed to its decision:

> (1) whether the defendant is incorporated or licensed to do business in Pennsylvania; (2) whether the defendant has ever filed any tax returns in the Commonwealth; (3) whether the defendant files administrative reports with any agency or department of Pennsylvania; (4) whether the defendant regularly purchases products or supplies within Pennsylvania for use in its business outside the state; (5) whether the defendant owns land or property within the state; (6) whether the defendant advertises in Pennsylvania; and (7) whether the defendant maintains an agent in the Commonwealth.

*Id.* at *8. Specifically, that court found the company's lack of incorporation, property or employees in the state failed to provide a sufficient nexus to the forum. *Id.*

9

The Federal Circuit, controlling in the instant case, has offered some authority as to the necessary quantum of commerce to establish general jurisdiction. *Campbell Pet Co. v. Miale*, 542 F.3d 879 (Fed. Cir. 2008). There, a "very small volume of sales"–approximately 2% of defendant's total sales–was deemed "far short of enough to reflect the substantial and continuous presence in the state necessary to support general jurisdiction." *Id.* at 884. However, that defendant also had additional contacts to the forum weighing in favor of general jurisdiction. The defendant had a website (available in the forum, but doing no business there), and had attended a trade convention in the forum where she took orders and "demonstrated her products and offered them for sale." *Id.* at 881-82.

Therefore, while small amounts of business do not preclude general jurisdiction, they are also generally are not enough to satisfy it. *See e.g. Lakin v. Prudential Sec.*, 348 F.3d 704, 708 n.7 (8th Cir. 2003) ("Other circuits, while not addressing this issue directly, have considered the percentage of a company's total business *as just one of the factors to consider* in a general personal jurisdiction analysis--with varying results." (emphasis added)).

In the instant case, there is disagreement as to the exact percentage of ECD's business conducted in Pennsylvania. Suffice to say, it is small. Plaintiff concedes this, but maintains that these transactions are substantial as they are frequent and systematic. Specifically, Plaintiff alleges general jurisdiction exists for ECD as it "regularly engages in business with dealers, vendors, and customers in the Commonwealth of Pennsylvania, and, further, distributes products in this judicial district." (Doc. 1 at ¶ 6). Plaintiff avers that Defendant is in constant communication with all of its vendors to ensure availability of product on demand, to follow up on product warranties, and to perform returns and

exchanges.  Plaintiff calculates that in considering the sales and purchased in tandem, ECD has had contact with Pennsylvania on almost a daily  basis.  (Doc. 28 at 6).  This, Plaintiff argues, constitutes continuous and systematic for the purposes of general jurisdiction.

In the period between January 2003 to April 2010, ECD has sold to forty-six different states, and at least 31 different states in any given year.  (Doc. 28-7 at 4-19, Ex. G.)  In that same period, ECD sold products to twenty-four Pennsylvania customers on a weekly basis, but no more than twelve in any given year.  (Doc 28-3 at 5, Ex. B).  Plaintiff alleges a high of .59% of sales to a low of 0.08%.  (Doc. 28 at 1).  Defendant responds that "ECD's few sales to Pennsylvania were not the result of soliciting specific customers, were items of ordinary inventory and not an important part of ECD's business, and amount to only 0.167 percent of ECD's total sales."  (Doc. 19 at 1; Provenzano 3d Decl., Doc. 32 at 3).

As for purchases, ECD's inventory consists of its own products as well as acquisitions from  outside vendors.  The purchase order     s  appear to require communication, i.e. confirmation with the vendor before finalization.   (Doc. 28 at 8).  ECD has eight vendors located in Pennsylvania, never doing business with more than five of them in any given year. (Doc. 28 at 4; Doc. 28-3 at 6, Ex. B).  In    the period of January 2003 to April 2010, this comprised a high of 1.28% of national vendor purchases to a low of .45% of national vendor purchases (per unit).  (Doc. 28 at 4).

In fact, the majority of these Pennsylvania purchases (98%) appear to be from Plaintiff Arlington.  However, they were placed at Arlington's office in Houston, Texas, shipped from Arlington's warehouse in Houston, Texas, and pay ment disbursed to Arlington's office in Atlanta, Georgia.  (Provenzano 3d Decl., Doc. 32 at 1).  As such, Defendant contends that

98% of its Pennsylvania purchases actually have no transactional nexus to Pennsylvania, though it is undisputed that Arlington is a Pennsylvania corporation and ECD has itself classified Arlington as a Pennsylvania supplier.  Still, ECD contests the notion that it could have reasonably anticipated being hauled into court by Arlington in Pennsylvania.  Similarly, Defendant contends that five more of the eight Pennsylvania vendors have no transactional connection with Pennsylvania due to similar arrangements.  (Claiming that between January 1, 2009 and August 9, 2010, only .065 percent of all sales were shipped to a Pennsylvania address.  (Provenzano 2d Decl., Doc. 19 at 2)).

Regardless of how these sales and purchases are tabulated, it is clear that they are not sufficiently substantial or significant to confer the basis for general jurisdiction.  In the face of such a small proportion, never exceeding two percent, courts require some further nexus with the forum in order to establish general jurisdiction.  Unlike the above cited cases, there is little beyond these regular sales and purchases that connects Defendant ECD to the forum.  Looking to the other factors, it is notable that ECD is not registered in Pennsylvania, possesses no property there, has never sent agents there, and does not pay taxes there. Aside from its website and newsletter, ECD's total contact with Pennsylvania is a mere sliver of its overall commerce.

Plaintiff maintains that ECD's strong dedication to customer service enlarges the nature of its contacts with the forum.  Specifically, Plaintiff contends that Defendant maintains ongoing of dealer relationships with the Pennsylvania businesses to which Defendant sold products. (Doc. 16 at 17).  The Court rejects this argument as it double-counts Defendant's contacts with the forum.  It may be true that contact with the forum accompanies each sale or

purchase.  However, it would be rather difficult for Defendant to complete such transactions

without some communication, and to argue that the communication itself is a forum contact

essentially counts each sale twice for the purposes of substantial contacts.  In other words,

each communication is directly related to a sale or purchase, adequately tallied above as a

proportion of overall commerce.  Moreover, in every case where general jurisdiction has been

found to be lacking because of insufficient commerce, it could generally be argued that the

commerce in those instances also included a requisite communication.  In the instant case,

the  parties present no evidence that Def  endant's  limited commerce in Pennsylvania is

qualitatively  different from that   in any other state, and ther    efore  this Court finds that

Defendant's accompanying contact is adequately represented in the percentage figures listed

above.

Finally, Plaintiff urges us to follow the test promulgated in *Provident National Bank v.*

*California Federal Savings & Loan Association*, 819 F.2d 434 (3d Cir. 1987), asserting that

Defendant's contacts are such that they go to the core of ECD's business model.  Ultimately,

this is unhelpful to Plaintiff's position.  While the Federal Circuit is controlling in the instant

patent case, *Provident* indicated that it was the centrality of the conduct to the defendant's

business was more important than t he magnitude of the conduct itself.   *Id.* at 438.   In the

Third Circuit, centrality appears to be additional   requirement, and is not alone sufficient.

*Fisher v. Teva PFC SRL*, 212 Fed. Appx. 72, 75 (3d Cir. N.J. 2006) ("The contacts must *also*

be a central part of the defendant's business." (emphasis added)).  See also *Phila. Macaroni*

*Co. v. Italpasta Ltd.*, 2010 U.S. Dist. LEXIS 39030, at *  14-15  (E.D. Pa. Apr. 20, 2010)

(explaining that "courts within the Third Circuit have recognized  that general jurisdiction is

lacking with respect to a defendant who conducts a minimal amount of business in the relevant forum and where such business activity does not qualify as a central part of the non-resident's business"). Moreover, such centrality has been interpreted not that the action itself is central to the business model, but that the action *in the forum* must be central to the business model. *Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*, 64 F. Supp. 2d 448, 452 (E.D. Pa. 1999). In *Molnlyckle*, the court found no indication that business conducted in Pennsylvania was central to defendant's business where the defendant had no regular place of business in the state and sold less than one percent of its products there. *Id.*

In so much a particular business model requires buying and selling, Plaintiff's centrality argument would confer jurisdiction over a retailer for any purchase or sale in a given forum. This cannot be. As the foregoing illustrates, a minuscule proportion of sales, central or not, are not alone sufficient to alone carry general jurisdiction. In ECD's case, such a small proportion of sales within the form are not significant enough to label them central to the business. Therefore, I find that the purchases and sales listed above, although perhaps central to ECD's business model, do not meet the requisite level for general jurisdiction.

**2. Defendant's Periodic Newsletter**

ECD's extremely limited distribution of materials in Pennsylvania similarly does not subject it to general jurisdiction.

Defendant maintains a periodic newsletter goes out to over 1,000 customers and potential customers, two of which are located in Pennsylvania (0.02%). (Provenzano Decl. at ¶ 9, Doc. 9 at 2). Analogous to the analysis above such a small fraction of incidental contact is not enough to support general jurisdiction. *See e.g. Blackwell v. Marina Associates*, No.

No. Civ.A. 05-5418, 2006 WL 573793 at *4 (E.D. Pa.March 9, 2006) (finding "the mere fact that defendant mailed promotional materials to at least two Pennsylvania residents is not sufficient to demonstrate that defendant engaged incontinuous and systematic contacts with Pennsylvania.").

O'Connor v. Sandy Lane Hotel Co., Ltd., No. Civ.A. 04-2436, 2005 WL 994617 at *3 (E.D. Pa April 28, 2005), failed to find continuous and systematic contacts where a defendant periodically mailed newsletters to 865 Pennsylvania residents. Specifically, as the newsletters were "sent only to a targeted clientele of individuals who have independently sought out information, this limited interaction with Pennsylvania residents [was] insufficient to establish general jurisdiction." Id. Similarly, Romeo Entertainment Group, Inc. v. Showing Animals Respect & Kindness, there was no general jurisdiction where only five of 1,426 addresses were in the forum state, and only 0.087% of the donations received as a result of the mailing came from within the forum. 643 F.Supp. 2d 1109, 1114-15 (D. Neb. 2009). In Romeo, corporate officers had also visited the forum on business further strengthening the argument for general jurisdiction. Id. at 1114. Still, that court rejected the claim that such jurisdiction existed, finding the quantity of these contacts "de minimus, at most." Id. at 1115.

Like the above instances, Defendants newsletters directed at Pennsylvania residents are similarly de minimus. The existence of two periodic mailings, without additional evidence of purposeful targeting or a substantial connection to forum transactions, is simply too attenuated in the general jurisdiction calculation. As such, the Court finds them insufficient to confer the basis of general jurisdiction.

### 3. Defendant's Website

15

ECD's websites of limited interactivity are not sufficient to confer the basis of general jurisdiction.  ECD has two publically accessible websites.  Over the past seven years, these two websites made a total of  forty-five sales totaling $14,303 to Pennsylvania customers.  (Provenzano 3d Decl., Doc. 32 at 3).  Of thos e sales, only seven,  totaling about $2,056, included a Pennsylvania billing or shipping address.  *Id.* at 5.

In support of jurisdiction, Defendant's webs ite claims that ECD "serv[es] the entire U.S. with over 100 v endors and 4,000 stocked items to se rve the custom installation industry."  (Ex. 10 to Boak Decl.).  ECD boasts that it "sells the finest brands of electronics to installing dealers all over the country—who then sell the items to end users."  (Ex. 1 to Boak Decl.).  It also allows users to contact the Defendant, and to place orders that are "ready to ship anywhere in the U.S." (Ex. 10 to Boak Decl)  However, in order to "purchase products through defendant's website (or to purchase genera lly from defendant), a user must first apply to become an installing dealer and establish an account with Defendant."  (Doc. No. 16 at 5).  In short, internet sales require registration.

*Zippo Mfg. Co. v. Zippo DOT Com* was an early attempt to set a standard for general jurisdiction when considering internet contacts. 952 F. Supp. 1119 (W.D. Pa. 1997).  It held general jurisdiction proper for "active websites"—where a "defendant clearly does business over the Internet."  *Id.* at 1124.  However,  *Zippo Mfg.* offers two other possibilities: (1) "passive websites"—inappropriate for general jurisdiction—which do "little more than make information available to those who are interested;" and (2) a middle ground, "where a user can exchange information with the host computer."  *Id.*  Yet, "[i]n the wake of *Zippo*, courts have been reluctant to find general jurisdiction based on internet contacts only, even in those

cases where the websites are highly interactive." *Nationwide Contr. Audit Serv. v. Nat'l Compliance Mgmt. Servs.*, 622 F. Supp. 2d 276, 292 (W.D. Pa. 2008).

As such, within the middle category, traditional notions of general jurisdiction generally apply. For cases falling in the gray area, "the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.* "As *Zippo* and the Courts of Appeals decisions indicate, the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003).

Plaintiff argues that Defendant's website is a "virtual store," "an interactive and highly commercial website by which Defendant clearly transacts business." (Doc. 16 at 14). This is an appeal to place Defendant's websites in the active category. According to Plaintiff, the fact "[t]hat a customer must first be approved as an installing dealer and complete a "Web Access Form" before making online purchases does not undermine the commercial nature of Defendant's website." (Doc. 16 at 13). In support of this, Plaintiff cites to *Obabueki v. Int'l Bus. Machs. Corp.*, Nos. 99 Civ. 11262 (AGS), 99 Civ. 12486 (AGS), 2001 U.S. Dist. LEXIS 11810 (S.D.N.Y. Aug. 14, 2001). However, that case found the "middle category" applicable to a website requiring customers to download and fax applications before accessing website's services. *Id.* at *11-12. This is highly analogous to

the instant case where users wishing to pur chase from Defendant's password-protected website must first apply before having the ability to make purchases.

In a similar patent infringement suit, it was held that a website "does not, on its own, suffice to establish general jurisdiction. To hold that the possibility of ordering products from a website establishes general jurisdiction woul d effectively hold that any corporation with such a website is subject to general jurisdiction in every state. The court is not willing to take such a step." *Molnlycke Health Care AB v. Dumex Med. Surgical Prods. Ltd.*, 64 F. Supp. 2d 448, 451 (E.D. Pa. 1999). In *Molnlycke*, it was unclear whether Defendant's website had transacted business within the forum. However, like the instant case, the defendant had two websites, one of which, unlike the instant case, allowed fo r direct orders without prior approval. *Id.* at 451. The court analogized these sites to "a general advertising campaign: while they are available in every state, they are not necessarily targeted towards every state." *Id.* at 452. Finding that there was no evi dence that the defendant had targeted the Pennsylvania forum, nor that Pennsylvania was a substantial part of defendant's business (at less than one percent of total sales), there was no general jurisdiction. *Id.* at 452-54.

The Federal Circuit has held that the "ab ility of [forum] residents to access the defendants' websites . . . does not by itself s how any persistent course of conduct by the defendants in the [forum]." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008) (quoting *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997)). In *Campbell*, a nationally accessible website was held insufficient for general jurisdiction as it was "not directed at customers in [in the forum] and does not appear to have generated any sales in [in the forum]." *Id.* There, a lack of general juri sdiction was found where that

defendant had also attended a trade convention in  the forum where she took orders and "demonstrated her products and offered them for sale."  *Id.* at 881-82.

The Federal Circuit has not opined whether a "highly interactive, transaction-oriented website . . . may support long-arm jurisdiction w  herever the site is  available to potential customers."  *Trintec Indus. v. Pedre Promotional Prods.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005).  However, as established,   Defendant's website is not   of that category anyway. Instead, Plaintiff contends that the link to their website "effectively established a continuous presence  in Pennsylvania, a virtual gateway      through which cust omers  pass to enter Arlington's facility." (Doc. No. 16).

Plaintiff's argument is ultimately unconvincing.  As noted above, there mere availability of  Defendant's websites within the forum is    not dispositive of a  continuous presence in Pennsylvania.  Nor are the websites highly interactive under the *Zippo* test as the registration requirements renders them, at best, mildly intera ctive.  Ultimately, there is no purposeful availment  to the forum in which to hang general       jurisdiction.  Despite the fact that Defendant's website is nationally accessible, there is no evidence that they have targeted Pennsylvania, nor have they accounted for a significant proportion of sales in Pennsylvania. Rather,  as in   *Molnlycke*,  these two websites are better analogized to an advertising campaign.  Therefore, like the contacts listed above, their contact with the form does not  rise to a sufficient level in which it would be proper    to exercise general personal jurisdiction.

Separately, none of Defendant's  contacts with the forum are significant enough to confer the basis of general jurisdiction.  Taken together, the result is still the same. *Campbell* analogizes extremely well to the instant case.    542 F.3d 879.  There,  as here, defendant

never did more than 2% business in the forum st ate.  There, as here,  Plaintiff also had a

website that was available in the forum.  However, unlike here, defendant in *Campbell* had

actually attended a trade show in the forum where it sold product.  Yet, this all was still not

enough to sustain general jurisdiction.  Here, the Court arrives at a similar result.  Within the

forum, Defendant conducts less than two percent of its commerce, distributes an insignificant

numbers of newsletters, and operates two nationally available websites.  This falls below the

level of contacts found insufficient in    *Campbell*,  and it therefore falls below the level of

contacts  necessary to confer general jurisdic  tion.    Therefore, I find a lack of general

jurisdiction over Defendant ECD in the instant case.

### B. Specific Jurisdiction

Specific  jurisdiction exists where (1)   "the  defendant has purposef ully  directed his

activities at residents of the  forum;" and (2) "the litigation results from alleged injuries that

'arise out of or relate to' those activities." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d

1324, 1330 (Fed. Cir. 2008) ( quotations and citations omitted).  As a final matter, a court

shall also determine whether the "assertion of personal jurisdiction is reasonable and fair."

*Id.* at 1332 (citation omitted).  The plaintiff has the burden of making a prima facie showing

on  the first two elements, and if they ar    e met the defendant may   still  defeat personal

jurisdiction by "present[ing] a compelling case    that  jurisdiction would be constitutionally

unreasonable."    *Akro Corp. v. Luker*, 45 F.3d 1546 (Fed. Cir. 1995).   "This 'purposeful

availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as

a  result of 'random,' 'fortuitous,'   or 'attenuated' contacts, or of    the 'unilateral activity of

another party or a third person.'"   *Burger King*, 471 U.S. at 475 (internal citations omitted).

"With respect to the last prong, the burden of proof is on the defendant, which must present a

compelling case that the presence of some other considerations would render jurisdiction

unreasonable under the five-factor test articulated by the Supreme Court in *Burger King*."

*Avocent*, 552 F.3d at 1332.

Plaintiff's sole argument concerning specific jurisdiction rests on Defendant's alleged

patent enforcement activities.  However, certain enforcement activities are exempted from

the exercise of personal jurisdiction.  Based on "policy considerations unique to the patent

context," *Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003), "letters

threatening suit for patent infringement sent to the alleged infringer by themselves 'do not

suffice to create personal jurisdiction.'"  *Id.* at 1202 (quoting *Red Wing Shoe*, 148 F.3d at

1359-60).  "[W]ithout more, a patentee's act of  sending letters to another state claiming

infringement and threatening litigation is not sufficient to confer personal jurisdiction in that

state."  *Campbell Pet Co.*, 542 F.3d at 885.  In this, the Federal Circuit has explained that:

> Principles of fair play and substantial justice afford a patentee sufficient latitude
> to inform others of its patent rights without subjecting itself to jurisdiction in a
> foreign forum.  A patentee should not subject itself to personal jurisdiction in a
> forum solely by informing a party    who  happens to be located there of
> suspected infringement.  Grounding personal jurisdiction on such contacts
> alone would not comport with principles of fairness.

*Red Wing Shoe*, 148 F.3d at 1360-61.  Thus, "there must be 'other activities' directed at the

forum and related to the cause of action besides the letters threatening an infringement suit."

*Silent Drive*, 326 F.3d at 1202.

Examples of these "other activities" include initiating judicial or extrajudicial patent

enforcement within the forum,  or entering into an exclusive license agreement or other

undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1334 (Fed. Cir. 2008). Yet, even these instances are viewed as the outer limits of specific jurisdiction: "Even a patentee's exclusive licensing and enfor cement activities in the forum raise questions as to the propriety of an assertion of personal jurisdiction over a non-resident defendant." *Id.* at 1336.

In the instant case, Plaintiff contends that Defendant is subject to specific jurisdiction as the instant suit allegedly arises out of Defendant's patent enforcement activities. "Here, Defendant has purposefully directed activity (extrajudicial patent enforcement and threats of litigation) at Arlington, a Pennsylvania resident." (Doc. 28 at 20). In support of this position, Plaintiff cites two supposed instances of extrajudicial enforcement. These instances included Defendant amending its patent application to apparently expand its scope, and a request for an ex-parte re-examination of Arlington's patent in an attempt to invalidate it. (Doc. 16 at 22). "While Defendant filed its amendments and request for re-examination with the [U.S. Patent and Trade Office] in Alexandria, Virginia, its actions were aimed at, and their effects intended to be felt in, Pennsylvania. Where, as here, acts are both aimed at and intended to cause injury in the forum state, such acts are sufficient to confer specific personal jurisdiction over the defendant." (Doc. 16 at 22-23).

Principles of fair play and substantial justice require that Defendant not be subject to specific jurisdiction due to a patent infringement notice. As noted above, informing others of your patent rights does not alone subject you to specific jurisdiction within the forum. To hold otherwise would subject defendants to suit wher ever a plaintiff was located, however

attenuated that forum is to the defendant's activities.  Furthermore, such patent infringement notices can include threats of litigation: "As we have noted, the e-mails and letters from [defendant's] counsel to [plaintiff] are insufficient to give rise to personal jurisdiction in light of the principles of *Red Wing Shoe*.  Warnings and threats of infringement suits are typical in such correspondence, as are offers to license."  *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 791 (Fed. Cir. 2011).

ECD submits that, prior to the previous  lawsuit that Arlington withdrew, "ECD had never communicated with Arlington regarding the '405 patent, much less did ECD threaten to file suit against Arlington." (Provenzano Decl., Doc. 9 at 5).  Regardless, as ECD's alleged assertion of patent infringement did nothing more than put Arlington on notice of potential infringement, it is not alone enough to subject it to specific jurisdiction in Pennsylvania.

Furthermore, Defendant has not initiated any other activities against Plaintiff that can be characterized as "other activities" directed at patent enforcement within the forum.  Putting aside the matter as to whether actions directed towards an unrelated patent can constitute patent enforcement, the requests for amendments and reexamination were directed at the Patent and Trade Office (PTO) in Alexandria, Virginia—not Pennsylvania.  Analogous to the instant case is *Radio Systems Corp. v. Accession, Inc.*, 638 F.3d 785 (Fed. Cir. 2011). There, the Federal Circuit affirmed the District Court's holding that similar contacts with the PTO were directed at Virginia rather than the forum. *Id.* at 792.  Specifically, the defendant in Radio Systems left a voice message with the PTO examiner, in Virginia, causing the PTO to withdraw its notice of allowance on the plaintiff's patent.  *Id.* at 788.  In doing so, the court was firm that it had "made clear in *Avocent* that enforcement activities taking place outside

the forum state do not give rise to personal ju risdiction in the forum, and that decision is controlling here." *Id.* at 792.  Here, Defendant's activities regarding the PTO similarly took place in Virginia and do not give rise to personal jurisdiction within the forum.

Therefore, the Court concludes that specific jurisdiction is inapplicable in the instant case.  As such, it is unnecessary to consider whether such jurisdiction would comport with fair play and substantial justice.

### III. Conclusion

For the reasons stated above, the Court will grant Electronic Custom Distributors' Motion to Dismiss on the present action for lack of personal jurisdiction. (Doc. 8.).  An appropriate order follows.


 September 15, 2011                              /s/ A. Richard Caputo

Date                    A.                              Richard Caputo
                                                United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ARLINGTON INDUSTRIES, INC.,

Plaintiff,

v.

ELECTRONIC CUSTOM
DISTRIBUTORS, INC.,

Defendant.

CIVIL ACTION NO. 3:10-CV-842

(JUDGE CAPUTO)

<u>**ORDER**</u>

**NOW**, this 15th day of September, 2011, **IT IS HEREBY ORDERED** that

Electronic Custom Distributors' Motion to Dismiss (Doc. 8) is **GRANTED**.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge